**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tony ESPOSITO, Defendant–Appellant.**

No. 88–1726.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1988.

Decided Jan. 26, 1989.

Patrick A. Tuite, Tuite, Mejia & Giacchetti, Chicago, Ill., for defendant-appellant.

David A. Glockner, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and GRANT, Senior District Judge.*

BAUER, Chief Judge.

Tony Esposito appeals from his convictions for possession and transfer of a machine gun and a silencer in violation of 26 U.S.C. § 5861(d) and (e), and for possession of a silencer not identified by a serial number in violation of 26 U.S.C. § 5861(i). His principal and only claim discussed herein is that the district court erred in refusing to instruct the jury that it could accept Esposito's rather interesting theory of defense. For the reasons that follow, we affirm Esposito's convictions.

Esposito was a firearms dealer. At trial, the government proved that he was a crooked one. It presented impressive evidence, much of it in the form of taped conversations, that in January of 1987 Esposito sold a machine gun and an accompanying silencer to Sergeant Daniel Callahan of the Criminal Investigation Division of the Illinois State Police, who had posed undercover as a somewhat ignorant first-time arms purchaser named "Dan Kelly."

Esposito also was a part-time cop. At trial, he attempted to show that he was, to say the least, an exceptionally zealous one. He presented evidence that he was a member of the Illinois Auxiliary Police Force and of the Emergency Service Disaster Agency ("ESDA") for Hoffman Estates, Illinois. The former is a privately chartered organization that helps local communities handle traffic control, large crowd gatherings, parades, and the like, by offering its members for deputization. The latter, run by the Hoffman Estates fire chief, provides similar services.

Esposito also called Joseph Ippolito, a Chicago police officer who had purchased twenty to thirty guns from Esposito, to testify on his behalf. Ippolito testified that in June, 1986, Esposito had mentioned to him that someone had asked Esposito about purchasing an automatic weapon. According to Ippolito, Esposito next discussed "Kelly" in mid-January, when Esposito said "Kelly" was insisting on buying a machine gun despite Esposito's efforts to stall "Kelly" and to talk him out of the purchase. Ippolito said he suggested that Esposito notify the Hoffman Estates Police Department and that, a week later, Esposito reported that the Hoffman Estates authorities were unable to assist. Ippolito testified that he then said that Esposito could make the arrest so long as he had something illegal to sell and the transaction was completed. According to Ippolito, Esposito told him during one of their conversations that someone had approached him to sell an illegal weapon, and Esposito and Ippolito discussed a double arrest. Ippolito testified that he agreed to meet Esposito on the evening of the arranged transaction, but did not show up because his wife was ill.

Ippolito admitted that he never notified anyone else in the Chicago Police Department of Esposito's story despite regulations to the contrary, that he never spoke with anyone at the Hoffman Estates Police Department, and that he never asked Esposito whether he had contacted the Elk Grove Village Police Department, the department whose jurisdiction covered the site of the wrongdoing. He also testified that when he realized he would be unable to attend the meeting at which Esposito planned to arrest "Kelly" he neither sent anyone else to cover for him nor notified anyone of Esposito's plans; he simply left

* The Honorable Robert A. Grant, Senior Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

a message on Esposito's answering machine. Ippolito explained himself by saying that he told Esposito not to make an arrest without him. Finally, Ippolito never came to his friend Esposito's aid after the latter was arrested by telling federal authorities that Esposito was assisting him in an effort to nab "Kelly."

Esposito also testified on his own behalf. He stated that he decided to arrest "Kelly" in early January of 1987 after a meeting at which "Kelly" insisted on buying an automatic weapon. Esposito testified that he thought he had a number of sources of authority for making such an arrest: his membership in the Illinois Auxiliary Police force; his affiliation with the Hoffman Estates ESDA; his conversations with Ippolito; and his powers as an ordinary citizen. Esposito conceded, however, that auxiliary policemen are deputy police officers only after being officially sworn in at the site of a particular event and only for the duration of that event, that no one had deputized him to investigate "Kelly," and that he was "not necessarily saying the arrest would have been made in the name of the Illinois Auxiliary Police." He also admitted that his affiliation with the Hoffman Estates ESDA was limited to awaiting disasters, handling church traffic, and controlling crowds at such things as sports events. He testified that he did not think he had the authority as an ESDA affiliate to conduct a three-week undercover operation. Finally, Esposito admitted that Ippolito never deputized him to assist in an investigation of "Kelly," and could not remember whether Ippolito had told him to complete the arrest in Ippolito's absence. He testified that he never told any police department about "Kelly" and that the only person besides Ippolito with whom he discussed the subject was Sam D'Amato, the fire-department supervisor of the Hoffman Estates ESDA.

At the close of the evidence, Esposito submitted the following two jury instructions, both of which the district court rejected:

Defendant's Theory of Defense Instruction Number 2

It is Tony Esposito's theory of defense that he had the authority as a part-time police officer and/or because he had been authorized by a police officer, Joseph Ippolito, and/or he had the right under state statute to possess the bolt and silencer for the purpose of assisting in the arrest of Dan Kelly.

If you find that Tony Esposito possessed the bolt and silencer for the purpose of arresting Dan Kelly, or that Tony Esposito was exempt from complying with the law, or if you find that he reasonably had the right to possess the items for the purpose of assisting in or [sic] the arrest of Dan Kelly, then you should find Tony Esposito not guilty.

Defendant's Instruction Number 3

Honest mistake of fact negates the criminal intent of the Defendant, when the Defendant's acts would be lawful if the facts were as he supposed them to be.

Esposito contends on appeal that the district court should have instructed the jury to find him not guilty if it concluded that he acted with law enforcement authority and possessed the machine gun and silencer only for the purpose of effecting "Kelly's" arrest. He also argues that the district court should have instructed the jury that it had to find Esposito not guilty if it concluded that he reasonably believed that he possessed the authority to arrest "Kelly."

Nonsense. A defendant is entitled to a theory-of-defense instruction only "if: the defendant proposes a correct statement of law; the defendant's theory is supported by the evidence; the defendant's theory of defense is not part of the charge; and the failure to include the defendant's theory of defense in the jury charge would deny the defendant a fair trial." *United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir. 1987). Although it is by no means a clear question, we need not decide here whether Esposito's theory of defense—that if he was acting or reasonably believed he was acting with law-enforcement authority to make an arrest, he lacked the criminal intent necessary for conviction under 26 U.S.

C. § 5861—is a correct statement of law. For even if Esposito's defense theory were legally correct, our review of the record convinces us that there was no evidence to support it. There simply was no evidence from which a jury could conclude that Esposito possessed or *reasonably* believed he possessed the authority to act as he did.

To begin with, Esposito admitted at trial that his affiliation with the Illinois Auxiliary Police and the Hoffman Estates ESDA made him an occasional traffic cop and crowd control assistant, not an undercover government agent with the authority to possess and transfer machine guns and silencers in the process of making unassisted arrests. Consistent with that admission, the director of the Hoffman Estates ESDA testified that its members had no criminal investigative authority and no authority to carry weapons or make arrests on behalf of the local police department. The president of the Illinois Auxiliary Police also testified that when a member of that organization serves at a special event, the member receives police powers solely for the event's duration. When an auxiliary policeman arrives at an event, he signs a document granting police powers; when he departs at the event's completion, he signs another document relinquishing those powers. Esposito conceded that he was not acting in his capacity as an auxiliary policeman when he conducted his investigation of "Kelly," that he had not planned to arrest "Kelly" in the name of the Illinois Auxiliary Police, and that he had not been deputized to do so.

Esposito's reliance on his conversations with Ippolito as authorization to possess and transfer a machine gun and silencer, and to make an arrest without Ippolito's assistance, similarly is unavailing. Ippolito denied bestowing any such authority upon Esposito; indeed, he testified that he told Esposito *not* to attempt an arrest without him. Esposito himself could not remember at trial whether Ippolito had authorized him to make an arrest in Ippolito's absence. As for Esposito's last purported source of authority mentioned in the proffered instruction—some unidentified state statute—we are in the dark. It may refer to

Esposito's claim on direct examination that he held a license authorizing him to deal in machine guns during January 1987 and that he had applied for that license—actually a tax stamp—in December 1986. But Esposito admitted on cross-examination that he did not submit the application form for that stamp until after he was arrested. Esposito's brief and argument on appeal do not clarify this point, they ignore it.

Thus, we find no evidence to support a defense theory that Esposito (1) had the authority to possess and transfer a machine gun and silencer for the purpose of arresting "Kelly" or (2) reasonably believed he had such authority. In our view, Esposito's theory of defense rested on quicksand. As the district court concluded, even "assuming that [Esposito] sincerely thought he was a white hat doing something good, he certainly did it as a cowboy and without reasonable belief." There is no evidence from which to conclude otherwise.

The district court committed no error. AFFIRMED.